VAHLBERG *v.* BIRNBAUM.

Opinion delivered June 19, 1897.

ASSIGNMENT FOR CREDITORS—WITHHOLDING PROPERTY—A deed of assign-
ment for the benefit of creditors is not void for withholding property
claimed to be exempt, since if it is exempt creditors are not prejudiced,
and if not exempt it may be taken in execution and sold by creditors.
(Page 211.)

SAME—PREFERENCES.—An insolvent firm may by deed of assignment prefer
any firm debt, even though it is secured by mortgage upon the individ-
ual property of one who had formerly withdrawn from such firm.
(Page 211.)

SAME—FAILURE OF ASSIGNEE TO FILE SCHEDULE.—A deed of assignment
will not be invalidated by the failure of the assignee to file an inventory
of the property conveyed.   (Page 212.)

SAME—EFFECT OF FRAUD.—A fraudulent disposition of property invalidates
a subsequent assignment only when the deed of assignment is part of a
scheme to defraud, and the provisions of the deed are calculated to pro-
mote the object.   (Page 212.)

Appeal from Garland Circuit Court.

ALEXANDER M. DUFFIE, Judge.

STATEMENT BY THE COURT.

This is an action instituted originally in the court of com-
mon pleas of Garland county, by appellees against appellants,
on an account, and at the beginning of the suit an attachment
was issued against the property of appellants, on the alleged
grounds that they had sold and conveyed, and were about to
sell and convey, their property, with the fraudulent intent to
cheat, hinder, and delay their creditors.   Appellants controverted
the attachment by proper affidavit.   The case went from the
court of common pleas to the circuit court of Garland county,
and was there tried by a jury on the issue raised by the affidavit
for attachment, and the counter affidavit of appellants.   The
verdict was for appellees, sustaining the attachment, and judg-
ment was entered accordingly.   Appellants, within due and
proper time, and by proper proceedings, appealed to this court.

The facts relied on by appellees to sustain the attachment grew out of an assignment by appellants, W. J. & T. J. Bledsoe to L. B. Durnell, for the benefit of their creditors. The deed of assignment relied upon by the appellees to sustain their contention conveyed all the property of the assignors to the assignee, except that which was exempt to them by the laws of Arkansas, a schedule of which was attached to the deed. The deed provided that, upon filing an inventory and executing a bond in the manner as required by section 305 of Mansfield's Digest, the assignee should take possession of the property assigned, and sell and dispose of the same at public auction within the time and according to the provisions of chapter 8 of Mansfield's Digest of the Statutes of Arkansas, and with due diligence collect all the claims, debts, and demands assigned, and, with the proceeds of said sale and collections, first pay and satisfy all just and reasonable expenses and commissions attending the due execution thereof, and out of the residue pay the debts of the assignors, in the order named in the deed and schedules therein referred to.

Attached to the deed were exhibits therein referred to, describing the property conveyed, the property claimed by T. J. Bledsoe as exempt, and a list of the creditors of the assignors, etc.

*Wood & Henderson*, for appellant.

The court erred in giving instructions 3 and 5. 42 Ark. 423; 54 *id*. 449; 99 U. S. 119; 59 Ark. 562; 122 U. S. 122; 50. Fed. Rep. 898; 49 *id*. 138; 27 S. W. Rep. 657; 160 U. S. 149. If the property claimed was not exempt, then it passed by the deed, and was not included in the reservation.. 59 Ark. 503. See also 60 Ark. 1; 35 N. W. Rep. 47; 21 *id*. 280; 63 Fed. Rep. 90; 21 N. W. Rep. 286. The eighth instruction is not the law, and the sixth is wholly abstract. 54 Ark. 129, and cases cited.

*A. Curl* and *Greaves & Martin*, for appellees.

There can be no exemptions out of partnership assets. 46 Ark. 48; Bates on Partnership, § 1131; Burrill on Assignments, § 6, and note 2 (6th Ed.); 3 Lea, 118; 9 *id*. 381; 16 Bank.

Reg. 181; 8 Biss. 35; 5 Am. Law Rec. 173; 23 Cal. 514; 60 N. W. Rep. 936. Instructions 3 and 5 were given on the theory that the horses, wagon, etc., were partnership property, and if the agreement to make them *individual* property, so they might be claimed as exempt, was made at the time of, or entered into the assignment, it made it void. See authorities *supra*. The assignee had knowledge of this, and therefore participated in the fraud. Notice of the fraud to the assignee is sufficient to make him a participant. 37 Mo. 500; 68 Mo. 435; 1 Ind. 405; 1 Smith, 190; 103 U. S. 22; 1 Curt. 157. The assignee must not deliver, nor the assignee take possession, in pursuance of a contemporaneous agreement, whether parol or expressed, before inventory and bond are filed. 57 Ark. 537; 53 *id.* 88; 59 *id.* 509; Wade, Notice, § 11.

HUGHES, J., (after stating the facts.) The acts upon which appellees based their contention, as shown by the record, may be summarized as follows: (1) The withdrawing by W. J. Bledsoe, one of the firm, from the assets of the co-partnership, before the assignment, moneys with which to pay his father the debt he owed him for borrowed money, and the claim of T. J. Bledsoe in the assignment of the horses, wagon, and harness as exempt. (2) The preference in the assignment of the $800 to Fink & Nasse, which were secured by mortgage on the individual property of W. F. Vahlberg, a former member of the firm of W. J. & T. J. Bledsoe, and who was also liable on the Fink & Nasse notes. (3) The failure of the assignee to attach to the inventory filed by him a list of the acccounts assigned to him, and taking possession by him of the assigned property without having so attached said list. And the questions involved in the controversy here grew out of the rulings of the court below in giving and refusing instructions to the jury as the law of the case applicable to those three propositions. Instructions three and five, on behalf of appellee, were given on the first proposition; instruction eight was given on the second; and instruction six was given on the third.

We copy the third and fifth instruction here, as follows:

"3. If the evidence shows that while W. J. and T. J. Bledsoe were partners in business, and while the concern was

insolvent, one of the partners drew, out of the assets of the firm, money with which to pay his individual debts, and to offset this, by agreement between them, the other partner was permitted to take of the concern's property when the deed of assignment was made, or in contemplation, and appropriated the same to his own use, this would be a fraud upon the creditors, and is of itself sufficient to sustain the attachment in this action as to the parties to the assignment.

" 5. If the evidence shows that when the defendants, W. J. and T. J. Bledsoe, made the assignment introduced in evidence, or in contemplation of an assignment which they afterwards made and executed, one of the firm retained, out of the assets of the firm, a wagon, harness and two horses belonging to the firm as so much exempt to him under the constitution of this state, this would be a fraud upon their creditors, and is of itself sufficient to sustain the attachment herein; or if, by agreement of the partners made at the time of the deed of assignment, or when the same was in contemplation, certain of the firm's assets were set apart to one of the partners for the purpose of enabling him to claim such property as exempt, this would be a fraud upon their creditors, and of itself sufficient to sustain the attachment herein."

The evidence upon which these two instructions were based tends to show this state of case: When W. J. and T. J. Bledsoe went into business as partners in 1892, W. J. Bledsoe borrowed of his father all the capital he put in the business, say about $410, which he paid back from time to time out of the business; the last of it being paid about the time that Vahlberg drew out of the firm, something like a week before the assignment, and when the firm was unable to pay its debts in full. The withdrawal of this money out of the business by W. J. Bledsoe made the account between him and his partner, T. J. Bledsoe, with the firm unequal; and two or three days before the assignment, when they had determined upon changing the character of their business by dispensing with the wagon and horses, and before they had said anything about making the assignment, in order to make the amounts which they had drawn out of the business equal, it was agreed between W. J. and T. J. Bledsoe that T. J. should take the wagon, horses and

harness as his individual property. T. J. took the horses, wagon and harness out of the business on Saturday, or, perhaps, Friday, before the assignment on Monday. The assignment was executed on Monday, and the horses, wagon and harness were included in the schedule of the property assigned, which was attached to the deed of assignment. They were also included in the schedule of the property claimed by T. J. Bledsoe as exempt, also attached to the deed of assignment. These facts appear from the testimony of W. J. and T. J. Bledsoe and the deed of assignment, and there is nothing in the evidence to contradict them. Upon this state of case, do instructions three and five state the law correctly?

The claim of the property as exempt from execution was open, and the property claimed was pointed out in their schedule, and fully described. There was no withholding of property in this. It was open, fair and not fraudulent. *Baker* v. *Baer*, 59 Ark. 503; *King* v. *Hargadine-McKittrick Dry Goods Co.*, 60 Ark. 1. If the property was not exempt, it could have been taken in execution, and sold by the creditors. The deed of assignment conveyed only such property as was not exempt from execution, and this property claimed as exempt was not conveyed. The assignment might therefore be said to be a partial assignment, though purporting to convey all of the assignor's property and effects, except that allowed by law as exempt. Wherefore instructions 3 and 5 given are erroneous.

The eighth instruction is as follows: "If you find from the evidence that the debt secured by the mortgage from W. F. Vahlberg to Fink & Nasse, or any part of the same, was the contribution of W. F. Vahlberg to the capital stock of the firm of Vahlberg & Bledsoe, then the preference of such debt in the deed of assignment was void as to the creditors of the said Vahlberg & Bledsoe, and is of itself sufficient to sustain the attachment herein." The evidence is undisputed that the Fink & Nasse debt of $800 was a debt of the firm of Vahlberg & Bledsoe, composed of the appellants, and that when Vahlberg withdrew from the firm, about a week before the assignment, W. J. & T. J. Bledsoe assumed said debt, together with all other indebtedness of the firm of Vahlberg & Bledsoe. At the time of the assignment it was then a debt of the assignors,

which they had as much right to pay as any other. The eighth instruction is therefore erroneous; is not the law.

The sixth instruction is as follows: "If the evidence shows that the property assigned was delivered by the assignors to the assignee, and said assignee was permitted to manage or control the same under an implied understanding between the assignors and the assignee at the delivery of the deed, before he filed in the office of the chancery clerk a full and complete inventory of the property assigned, including notes, accounts, and cash, this would of itself render the assignment void, and sustain the attachment in this action, and the jury should so find." In this case the deed conveyed all accounts, debts, demands, etc., and the assignee says he made a full inventory of them, and intended to file it, and thought he did file it, but it was not with the inventory on file with; the deed of assignment said he might have dropped it on his way to the court house to file it. The property passed by the execution and delivery of the deed of assignment, and the title vested thereby, and no acts or omissions of the assignee afterwards could affect it. They were not a part of the assignment. *Lowenstein* v. *Finney*, 54 Ark. 124.

It is contended by appellant that the sixth instruction is abstract. It is not contended that it is erroneous if there was any evidence upon which to base it.

We will only add that a fraudulent disposition of property invalidates a subsequent assignment only when the deed of assignment is part of a scheme to defraud, and the provisions of the deed are calculated to promote that object. *Hill* v. *Woodberry*, 49 Fed. Rep. 138.

For the errors indicated the judgment is reversed, and the cause is remanded for a new trial.

Absent WOOD, J.